BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| VINCENT D. MULLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant.<br><br>**[THIS DOCUMENT APPLIES TO ALL RELATED ACTIONS]** | Lead Case No. 3:13-cv-01271-RS<br><br>Related to:<br>3:16-cv-06685-RS (Caiazzo-FL)<br>3:16-cv-06703-RS (Lux-CT)<br>3:16-cv-06704-RS (Ravinsky-PA)<br>3:16-cv-06708-RS (Sandoval-NM)<br>3:16-cv-06721-RS (Dent-IL)<br>3:16-cv-07078-RS (Simmons-MI)<br>3:16-cv-07090-RS (Spencer-MD)<br>3:16-cv-06980-RS (Fishon-NY)<br>3:16-cv-07097-RS (Taylor-NJ)<br>3:17-cv-00054-RS (Schupp-MA)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br><u>CLASS ACTION</u><br><br>Judge:      Hon. Richard Seeborg<br>Courtroom:  3, 17th Floor<br><br>CMC Date:   July 19, 2018<br>CMC Time:   10:00 am |

In advance of the July 19, 2018, Case Management Conference, the parties to the above-captioned actions submit this Joint Case Management Statement. *See* ECF No. 257.

**Brief Procedural History**

This Joint Case Management Statement applies to ten related class actions that are brought on behalf of proposed single-state classes of the glucosamine-chondroitin joint health dietary supplement known as "Joint Juice" (the "Related Actions"). The Related Actions were filed between November 2016 and January 2017 and seek separate single state classes on behalf of those who purchased Joint Juice in Connecticut, Florida, Illinois, Maryland, Massachusetts, Michigan, New Jersey, New Mexico, New York, and Pennsylvania. Upon oral motion by Premier, and prior to Premier's deadline to file responsive pleadings, the Court stayed the Related Actions until after the trial in *Mullins v. Premier Nutrition Corp. See* ECF No. 170. Therefore, defendant has not yet answered or otherwise responded to the complaints filed in the Related Actions.

*Mullins* was filed was filed on March 21, 2013. On April 15, 2016, the Court granted certification of a class of California consumers who purchased Joint Juice from March 1, 2009 to April 15, 2016. *See* ECF No. 134. On April 15, 2016, the Court denied Premier's motion for summary judgment, holding that triable issues of fact remain for trial. *See* ECF No. 133. The Court set *Mullins* for trial on August 24, 2017. On July 20, 2017, Plaintiff filed a Motion for Leave to dismiss her claim for money damages under the CLRA and file a Second Amended Complaint ("SAC") that only sought equitable relief under the UCL and CLRA. After the Court granted Plaintiff's Motion, Plaintiff filed a SAC on August 24, 2017. On November 9, 2017, Premier moved to dismiss the claims for equitable restitution alleged in the SAC because Plaintiff had an adequate remedy at law for money damages under the CLRA and therefore cannot seek restitution under the UCL or the CLRA. *See* ECF No. 216. On January 23, 2018, the Court granted Premier's Motion to Dismiss Plaintiff's claims for equitable restitution. *See* ECF No. 229. The Court subsequently set a May 10, 2018 bench trial on Plaintiff's sole remaining claim for injunctive relief.

1    On March 12, 2018, Plaintiff moved to dismiss the injunctive relief claim without
2    prejudice for lack of personal jurisdiction. *See* ECF No. 241. Premier opposed Plaintiff's
3    motion only to the extent that she sought to dismiss her claim without prejudice. On April 17,
4    2018, the Court entered orders of dismissal with prejudice and judgment in the *Mullins* action,
5    finding that Plaintiff lacked standing to seek injunctive relief. *See* ECF No. 246. Plaintiff filed
6    an appeal in *Mullins*, with Appellant's opening brief due August 27, 2018.

### Civil Local Rule 16-9 Information

**1.    Jurisdiction and Service**

This Court has jurisdiction over the matters pursuant to 28 U.S.C. section 1332(d)(2) of the Class Action Fairness Act. Premier does not contest personal jurisdiction at this time. All named defendants have been served. There are no counter-claims, cross-claims, or third party claims.

**2.    Plaintiffs' Statements**

Plaintiffs offer the following suggestions on topics listed in Fed. R. Civ. 26(f). Premier has declined to discuss any of these matters with Plaintiffs' counsel, on the grounds that it is premature to do so since the cases are stayed and none is yet at issue.

**(a)    Brief Summary of the Facts and Legal Issues**

The Related Actions share factual and legal issues. Each is a false advertising and consumer protection class action brought under state deceptive practices acts and other claims. Plaintiffs allege that Joint Juice, a glucosamine and chondroitin dietary supplement advertised to treat, prevent and cure the symptoms of arthritis and non-diagnosed joint pain, does not work as advertised on its product label. In its order denying Premier's motion for summary judgment, the Court summarized the facts and legal claims:

> Plaintiff [] contends defendant Premier Nutrition Corporation peddles what amounts to worthless snake oil: Joint Juice, a liquid dietary supplement containing glucosamine hydrochloride ("glucosamine") and chondroitin sulfate ("chondroitin"). Joint Juice advertisements and packages encourage readers to drink the product to help keep joints flexible and lubricated. According to [Plaintiff], the real aim of these advertisements is impliedly to promote Joint Juice as a remedy for pain and stiffness in arthritic joints. In an effort to relieve joint pain and stiffness, [Plaintiff] contends she bought a six-pack of Joint Juice, drank a few bottles, but was ultimately dissatisfied with the product.

> Armed with numerous meta-analyses, clinical trials, treatment protocols, and expert reports, [Plaintiff] now argues that glucosamine and chondroitin do not and cannot palliate arthritic joints or improve the function of healthy joints, as Premier impliedly and expressly advertises. To remedy what she contends amounts to consumer fraud, she asserts claims for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 875, 899 (N.D. Cal. 2016). The Court also summarized Plaintiff's causation and damages and restitution theory:

> [Plaintiff] claims that she and other putative class members would not have purchased Joint Juice absent its claim to treat joint health problems or to keep joints healthy. Essentially, she argues that Joint Juice is nothing more than a liquid pill, which nobody would purchase unless they were concerned about joint health. Unlike juice, which consumers purchase for hydration, or cigarettes, which smokers purchase for flavor and to assuage nicotine cravings, Joint Juice is for all intents and purposes a liquid pill. Indeed, Premier has even stated that "the only reason to purchase Joint Juice® supplement is for the medicinal value of the glucosamine and chondroitin it contains." Blood Decl. CC Ex. 13 at 131440. That assertion is backed by some evidence: many consumers cite joint pain as the reason for trying and using Joint Juice, which raises the reasonable inference that they would not have bought the product absent the joint-health claims. While she may ultimately fail to prove that nobody would buy Joint Juice absent the joint health claims, she has produced enough evidence to draw that conclusion.

*Id.* at 899.

The proposed class actions seek certification of the following single-state classes brought under the corresponding state laws: Florida (*Caizzo*); Connecticut (*Lux*); Pennsylvania (*Ravinsky*); New Mexico (*Sandoval*); Illinois (*Dent*); Michigan (*Simmons*); Maryland (*Spencer*); New York (*Fishon*); New Jersey (*Taylor*); and Massachusetts (*Schupp*).

The factual and legal issues are similar to those raised by the parties in connection with Plaintiff's successful motion for class certification and Defendant's unsuccessful motion for summary judgment in *Mullins*.

**(b)    Motions**

Plaintiffs anticipate filing a motion for class certification in each of the actions.

BLOOD HURST & O'REARDON, LLP

**(c)    Amendment of Pleadings**

On July 12, 2018, Plaintiffs notified Premier's counsel[1] of their intent to file first amended complaints in the Michigan (*Simmons*) and Pennsylvania (*Ravinsky*) actions pursuant to Fed. R. Civ. P. 15(a)(1)(B) to add claims for breach of warranty, violation of the Magnuson-Moss Warranty Act, and for unjust enrichment. The Pennsylvania FAC was filed on July 12, 2018 and the Michigan FAC will be filed on August 13, 2018, following notice of Plaintiff's implied warranty claim. Plaintiffs and absent members of the classes reserve certain rights relating to the addition and substitution of class representatives.

**(d)    Evidence Preservation**

The parties are aware of the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and understand their obligations to preserve documents and other information. Among other steps, Premier has issued a litigation hold notice to potential custodians of relevant documents, instructing them to preserve potentially relevant documents.

**(e)    Disclosures**

Plaintiffs do not propose any changes to the timing, form, or requirement for Rule 26(a) initial disclosures.

**(f)    Discovery**

On July 12, 2018, Plaintiffs served their first sets of discovery requests in the Related Actions. Without prejudice to the ability to modify the scope of discovery, Plaintiffs seek documents and communications, including electronically stored information ("ESI") concerning: (1) advertising and marketing exemplars, market research, and related communications and marketing strategy information; (2) market research and consumer surveys relating to Joint Juice products, competitor products, and the ingredients contained in Joint Juice; (3) medical marketing; (4) the ingredient formulation for the Joint Juice products;

---

[1] Premier's counsel was "notified" of Plaintiffs' intent to file amended Complaints in the stayed cases when it received an updated draft of the Joint CMC Statement on July 12. Since these cases are currently stayed pursuant to the Court's prior Order, Premier believes Plaintiffs are not authorized at this time to make any amendments to the Complaints in the stayed cases.

(5) scientific studies relating to Joint Juice, glucosamine and chondroitin upon which Defendant asserts its advertising claims are based and studies that undercut those claims; (6) complaints and inquiries concerning Joint Juice; and (7) sales and expense information attributable to the sale of Joint Juice products.

In connection with *Mullins*, Premier produced ESI up through March 2014. Premier's anticipated agreement that Plaintiffs in these Related Actions may use the *Mullins* documents will streamline discovery in the Related Cases. However, the class periods in the Related Cases begin March 2009 and run to the present, therefore, discovery must be conducted for this time period. Other than sales information, which will vary by state, the discovery will be common for all the Related Cases. Further, Defendant has represented that it has not created any new marketing campaigns since the March 2014 production, and therefore anticipates that the current production will not be extensive. For the post-March 2014 documents and ESI, Plaintiffs are amenable to an ESI plan similar to that in *Mullins*. This includes the use of negotiated keywords and custodians / network sources to help winnow potentially responsive ESI. However, not all ESI or documents should be filtered through use of keywords because they are located in a location where winnowing is not sensible (e.g., it does not make sense to use keywords to narrow down a network folder that contains only Joint Juice market research documents).

Joint Juice is primarily sold through Costco, Sam's Club, and Walmart. Each of these entities maintain, to varying degrees detailed sales information which will assist in locating class members and determining damages and restitution.

**(g)   Class Actions**

Plaintiffs believe Fed. R. Civ. P. 23(a) and (b)(3) are satisfied in these Related Actions for the same reasons the Court certified the *Mullins* class.

As discussed in the Scheduling section below, plaintiffs believe motions for class certification can be filed within six months, provided Defendant completes production of the requested discovery within two months.

**(h)     Related Cases**

The parties are not aware of any related actions.

**(i)     Relief**

Based on information presently available, Plaintiffs seek the following remedies in the Related Actions, in addition to any other and further relief that the Court deems necessary and proper: (1) actual damages, statutory damages, punitive damages, and restitution and other equitable monetary relief in an amount to be determined; (2) declaratory and injunctive relief as permitted by law, including enjoining Premier from continuing the unlawful practices as set for the in the complaint and directing Premier to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement; (3) an order requiring Premier to engage in a corrective advertising campaign; and (4) attorneys' fees, costs and expenses. The calculation of damages will be the subject of discovery and expert testimony.

**(j)     Settlement and ADR**

The parties made several attempts to settle the action through the *Mullins* litigation.

Plaintiffs are amenable to discussing settlement, but need sales information to do so.

The parties will file ADR Certifications, discuss selection of an ADR process, and appropriate deadline pursuant to court order.

**(k)     Consent to Magistrate Judge for All Purposes**

The parties respectfully do not consent to proceed before a magistrate judge for trial.

**(l)     Other References**

The parties believe this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**(m)    Narrowing of Issues**

The parties have not agreed upon any narrowing of the issues at this time.

**(n)     Expedited Trial Procedure**

The parties do not believe that an expedited schedule is appropriate.

**(o)     Scheduling**

Plaintiffs propose the following schedule through class certification.

Plaintiffs believe post-certification deadlines (e.g., fact and expert discovery deadlines) are more efficiently set once the Court rules on the motions for class certification, and the parties are informed of the scope of the certified classes. Discovery should be conducted in all the Related Actions concurrently because the discovery will be the same for all of the Related Actions. To a degree, sales data will vary from state to state, however, defendant has previously stated it does not possess comprehensive state-by-state sales data, so Plaintiffs must obtain nationwide data to derive certain state-level information.

Because the discovery will be the same for all of the Related Actions, discovery should proceed in all of them. Similarly, the issues presented on class certification will be largely the same (and have already been addressed by the Court in *Mullins*), with potentially minor variations easily addressed. Therefore, plaintiffs propose the Related Actions be handled in a coordinated manner through class certification. Thereafter, one of the Related Cases can be chosen to proceed through post certification motions and trial. This approach allows the common matters to be addressed at the same time, while allowing separate state-only classes to proceed to trial in a deliberate manner.

Plaintiffs propose the following schedule:

- **August 20, 2018**: Premier's deadline to answer or otherwise respond to the complaints in the Related Actions.
- **October 29, 2018**: Deadline for Premier to complete production of documents and written discovery responses, based on Premier's representation that a relatively small amount of documents exist.
- **March 25, 2019**: Plaintiffs' motions for class certification due.
- **May 13, 2019**: Oppositions to class certification due.
- **June 17, 2019**: Plaintiffs' class certification replies due.
- **June or July 2019**: Class certification hearing.

**(p)  Trial**

Plaintiffs have demanded a jury trial on their damages claims.

    **(q)**    **Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs are not presently aware of any person or entity.

Premier filed its Certificate of Interested Parties on May 21, 2013 (*Mullins*, ECF No. 22). In light of changes in corporate ownership, on December 5, 2013, Premier filed an updated Certification, stating: "Pursuant to Local Rule 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to either: (i) have a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of this proceeding: 1. Post Holdings, Inc. 2. Former stockholders of Premier Nutrition Corporation."

    **(r)**    **Professional Conduct**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**3.**    **Premier's Statement**[2]

    **(a)**    **Plaintiffs' Case Management Proposal Is Contrary to This Court's Prior Rulings, The Federal Rules, and Is A Transparent Attempt to Leverage The Cost of Discovery In Ten Cases.**

Plaintiffs' counsel have been filing cases involving Premier's Joint Juice Products since 2013. As the Court is aware, eleven such cases have been filed. The lead case, *Mullins v. Premier Nutrition Corporation,* was scheduled for trial in September 2017. However, rather than trying the *Mullins* case on the merits, Plaintiff's counsel (who also represent each named plaintiff in the Related Cases) moved to dismiss the claim for monetary damages to avoid a jury trial and then later moved to dismiss the remaining claim for injunctive relief in order to avoid a bench trial. Despite their obvious unwillingness to have a jury (or judge) decide if

---

[2]   In the interest of brevity, and given the unique procedural stage of these cases, Premier has limited its portion of this Joint Statement to only the remaining issues before the Court, rather than the full contents outlined in the Northern District's Standing Order regarding Joint Case Management Statements. However, should the Court wish to discuss any other issues from that Standing Order, Premier will be prepared to discuss them at the Case Management Conference.

their allegations against Premier have any merit, Plaintiffs' counsel now seeks to impose a *three month deadline on Premier to simultaneously complete discovery in ten different cases*. This request should be rejected for multiple reasons.

*First*, as a practical matter, this exact proposal was already considered and rejected by this Court. Shortly after the Related Cases were filed, the Court held a case management in early 2017 conference for the Related Cases. *See* Dkt. No. 170. In advance of that hearing, Plaintiffs' counsel submitted a pre-trial scheduling proposal to this Court that is essentially identical to the one they propose herein. *See* Dkt. No. 168 at 2-3. Specifically, Plaintiffs' counsel proposed that the parties conduct discovery in all ten related cases simultaneously, so that they could be taken to trial "in quick and efficient succession after the *Mullins* trials [sic] concludes." *See id.* at 3. The Court rejected that proposal, and instead ordered the Related Cases stayed while the parties proceeded with *Mullins* as a "bellwether" proceeding to hopefully facilitate a global resolution of all eleven cases. *See* Dkt. No. 170. Rather than actually taking *Mullins* to trial to potentially facilitate such a global resolution, however, Plaintiffs' counsel instead repeatedly moved to dismiss their own client's claims, resulting in entry of judgment in favor of Premier. Now, Plaintiffs' counsel once again proposes the same "simultaneous discovery in ten separate cases" strategy, which continues to be nothing more than an inefficient waste of resources, and a transparent attempt to leverage the cost of conducting discovery in ten cases in hopes it will extract some sort of settlement.

*Second,* as a procedural matter, Plaintiffs' proposal is contrary to the Federal Rules of Civil Procedure because it purports to require Premier to gather and produce all documents relating to class certification (as well as depose all ten named Plaintiffs) within three months. However, by Plaintiffs' counsel's own admission, Premier has not even filed responsive pleadings to any of the Complaints in the Related Cases, much less engaged in a Federal Rule of Civil Procedure 26(f) Conference with Plaintiffs. The Federal Rules require parties to first conduct a Rule 26(f) conference before any obligation to respond to discovery begins to run. *See* Fed. R. Civ. P 26(d)(1); (f). Plaintiffs' counsel have made no effort to meet and confer with Premier about this requirement. Indeed, the first time Premier learned of Plaintiffs'

counsel's current discovery proposal was when it received Plaintiffs' draft Case Management Statement on July 10, 2018.  Plaintiffs' counsel's proposal wholly fails to account for Rule 26(f)'s requirement, which would set the earliest date for responsive discovery in mid-August – barely more than a month before Plaintiffs' proposed discovery cutoff.

Even more critically, Plaintiffs' proposal entirely ignores that Premier is entitled to an opportunity to answer or move to dismiss the Complaints in the Related Cases.  Plaintiffs' proposed schedule would effectively deprive Premier of this right entirely.  Moreover, under Plaintiffs' proposal, class certification discovery could very plausibly close before a hearing on a motion to dismiss would even take place.  *See* Fed. R. Civ. P. 12(b); N.D. Cal. Local Rule 7-2(a) (requiring a motion to be noticed for hearing no earlier than thirty five days after it is served).  Even assuming Premier filed a motion to dismiss immediately after the Case Management Conference concludes (which would be improper, given that the Related Cases are still technically stayed per the Court's 2017 order), and further assuming the Court is available to hear any such motion on the first possible day permitted by the Federal and Local Rules, and that the Court then issued rulings the same day as the hearing, Plaintiffs' proposal would then effectively truncate class certification discovery in ten separate cases to barely more than a month.  There is, quite simply, no legitimate reason for such a compressed schedule.

*Third*, Plaintiffs' counsel offers no justification for a three month discovery deadline in not just one **but ten separate cases**.  Nor could they.  Plaintiffs' counsel have had every opportunity to adjudicate this case on the merits.  Instead, as this Court is well aware, they have gone to extreme and highly unorthodox lengths to avoid presenting a single piece of evidence to a finder of fact.  There is no legitimate reason why discovery in even a single case – much less ten separate cases – needs to be completed in three months.  That is particularly true since Premier has not even responded to the Complaints in any of the Related Cases.

Simply put, there is no legitimate reason to simultaneously conduct discovery in ten separate putative class actions in the next three months—a proposal that this Court previously rejected.  Premier therefore respectfully proposes the following schedule:

### (b) Premier's Proposed Schedule

Rather than engage in an unnecessarily compressed schedule, Premier respectfully submits that a more reasonable and efficient way to proceed is a bellwether process where each party would select one of the ten related cases to prepare for trial. Once the Parties have each selected their respective bellwether case, they would submit proposed schedules to the Court which realistically account for both the Federal Rules of Civil Procedure's requirements (such as protecting Premier's right to move to dismiss and the requirement to engage in a Rule 26(f) conference) and allows adequate time to conduct depositions and prepare potentially case dispositive motions after discovery closes. This is the same procedure that Premier previously submitted to the Court in February 2017, and the same interests of efficient case management the Court previously agreed with continue to apply. *See* Dkt. No. 168 at 5 ("[S]imultaneously litigating the ten related putative actions . . . is likely to result in a waste of resources."). Therefore, Premier requests the Court adopt a bellwether procedure whereby each party would select one case for trial, the parties would meet and confer regarding the proper schedule for the two cases, and submit the proposed discovery and pre-trial schedule to the Court.

The "bellwether" process Plaintiffs propose ("one of the Related Cases can be chosen to proceed through post certification motions and trial") should be rejected. Typically in a bellwether proceeding, each side is permitted to select one case to be worked up for trial. Here, Plaintiffs' counsel essentially already had its pick—*Mullins*—prepared for trial, but they elected to dismiss their claims in order to avoid both a jury trial and a bench trial. Yet Plaintiffs' counsel now proposes that they be allowed to select another case they would like to take to trial. If only one case is to be selected (instead of both sides each picking a case as Premier proposes), then Premier respectfully submits that it be permitted to select the next bellwether case to be prepared for trial.

Dated: July 12, 2018
BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, California  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

ALTAIR LAW
CRAIG M. PETERS (184018)
369 Pine St., Suite 600
San Francisco, CA  94104
Tel: 415/988-9828
cpeters@altairlaw.us

CARLSON LYNCH SWEET KILPELA
  & CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiffs*

Dated: July 12, 2018           VENABLE LLP
                               ANGEL A. GARGANTA (163957)
                               JESSICA L. GRANT (178138)
                               BRIAN A. FEATHERSTUN (292625)

                               By:          s/ Angel A. Garganta
                                         ANGEL A. GARGANTA

                               101 California Street, Suite 3800
                               San Francisco, CA 94111
                               Tel: 415/653-3750
                               415/653-3755 (fax)
                               aagarganta@venable.com
                               jgrant@venable.com
                               bafeatherstun@venable.com

                               VENABLE LLP
                               JOHN CARLOS VAZQUES (*pro hac vice*)
                               1270 Avenue of the Americas
                               New York, NY  10020
                               Tel: 212/370-6293
                               jcvazquez@venable.com

                               *Attorneys for Defendant*

BLOOD HURST & O'REARDON, LLP

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: July 12, 2018          BLOOD HURST & O'REARDON, LLP

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 12, 2018.

                                                   s/ *Timothy G. Blood*
                                                  TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com