1

2

3

4

5

6

7                                     UNITED STATES DISTRICT COURT

8                                   NORTHERN DISTRICT OF CALIFORNIA

9

10    SANDRA DENT,                                    Case No.  16-cv-06721-RS

                     Plaintiff,
11

12            v.                                      **ORDER GRANTING IN PART**
                                                      **PLAINTIFF'S MOTION FOR**
                                                      **APPLICATION OF ISSUE**
13    PREMIER NUTRITION CORPORATION,                  **PRECLUSION**

                     Defendant.
14

15                                        **I. INTRODUCTION**

16            In the latest installment of this decade-long saga, Plaintiff Sandra Dent brings this suit on

17   behalf of herself and a class of Illinois purchasers of Premier Nutrition's product Joint Juice. Dent

18   avers Premier falsely marketed its product, in particular misrepresenting the power of Joint Juice

19   to alleviate conditions such as arthritis. Dent's suit, which relies primarily on an Illinois statute

20   prohibiting false or misleading marketing, is the second state-wide Joint Juice class slated to go to

21   trial against Premier in federal court. Another plaintiff, Mary Beth Montera, sued Joint Juice on

22   behalf of herself and a New York class of purchasers under two provisions of New York's General

23   Business Law. Montera prevailed in front of a jury and almost entirely on appeal to the Ninth

24   Circuit. Dent now seeks to use the judgment from *Montera* to estop Premier from relitigating

25   certain issues decided against it in the first trial. Premier opposes any application of such

26   nonmutual collateral estoppel, also known as issue preclusion.

27            This preclusion dispute could have ramifications beyond this matter. Six other state-wide

28   class cases are stayed in this court. Additionally, a California class is seeking a judgment against

United States District Court
Northern District of California

1  Premier in state court. Dent's attorneys, who also represent the California class, have argued the

2  *Montera* judgment forecloses dispute in several key issues in that case as well.

3        Plaintiff's counsel has not waived issue preclusion. The *Montera* case decided several

4  factual disputes identical to ones in this matter, specifically the materiality of Premier's

5  misrepresentations, Joint Juice's sale in commerce, and the measure of damages. Therefore,

6  Premier is precluded from relitigating these issues.

7                                      **II. BACKGROUND**

8        Given both parties' familiarity with this case, this order will not address the lengthy history

9  of the Joint Juice disputes. Suffice to say that after Plaintiff's counsel failed to certify a nationwide

10 class, they succeeded in certifying multiple statewide classes. To streamline the litigation, the

11 parties each proposed a statewide class to proceed to trial first, while the other classes remained

12 stayed pending the outcome of this bellwether-type trial. Mary Beth Montera and the New York

13 class were chosen as the first plaintiffs to proceed.

14       A jury found that Premier was liable to the New York class under New York General

15 Business Law ("GBL") Sections 349 and 350 for false and misleading advertising and marketing.

16 Premier appealed this judgment and its liability for damages to the Ninth Circuit, which affirmed

17 all substantive conclusions on liability, vacating and remanding only on damages amounts

18 prescribed by the relevant New York statutes. Premier has filed a petition for certiorari, asking the

19 Supreme Court to rule only on whether the Ninth Circuit panel should have certified questions of

20 New York state law to the New York Court of Appeals.

21       On remand from the Ninth Circuit on the issue of statutory damages flowing from the

22 *Montera* judgment, the parties turned to the next steps in the stayed cases. Based on the 2021

23 scheduling agreement, Defendant was entitled to select the next case to proceed to trial. Premier

24 selected the Illinois class to go forward, thus resuming Plaintiff's Sandra Dent's case after a four-

25 year pause.

26       Dent, just like Montera, argues Premier is liable for the false or misleading marketing of

27 Joint Juice. Premier does not dispute Dent and the Illinois purchasers saw the same labels as

28

ORDER ON ISSUE PRECLUSION
CASE No. 16-cv-06721-RS

United States District Court
Northern District of California

Montera and the New York purchasers during the same relevant time period. However, Dent's claims are brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505. Given the parties' 2021 agreement as to "bellwether" trials and the differences between New York and Illinois law, the question is whether the findings in *Montera* are binding in this matter.

### III. LEGAL STANDARD

Federal common law determines whether a previous judgment can have preclusive effect in a new matter. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Where the preclusive decision was rendered in a diversity action, federal common law requires the court to apply "the law that would be applied by state courts in the State in which the federal diversity court sits." *Semteck Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 508 (2001). California law therefore applies.

Under California law, "[i]ssue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015); *see also Baker v. GMC*, 522 U.S. 222, 233 n.5 (1998) ("issue preclusion ... binds the parties in a subsequent action, whether on the same or a different claim"). Issue preclusion, also called collateral estoppel, can be "non-mutual" meaning "[o]nly the party *against whom* the doctrine is invoked must be bound by the prior proceeding." *DKN Holdings*, 61 Cal. 4th at 825. Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Id*.

However, courts have discretion to deny issue preclusion if its application does not "comport[] with fairness and sound public policy," even if the above perquisites are met. *Vandenberg v. Super. Ct.*, 21 Cal. 4th 815, 835 (1999); *see also Syverson v. Intl. Bus. Machines Corp.*, 472 F.3d 1072, 1078–79 (9th Cir. 2007). Potential shortcomings or indices of unfairness include whether (1) "the plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment" which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with

full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first "and that could readily cause a different result." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979).

# I. DISCUSSION

Dent argues *Montera* settles the entirety of this case, leaving only punitive damages for the jury to determine. Premier first contends Dent's motion should be dismissed without any further discussion of the individual issues, but it fails to offer grounds to reject Dent's motion in full. More persuasively, Premier then rebuts Dent's arguments on which specific issues are precluded. Upon closer examination, *Montera* decides some, but not all the issues in this litigation.

## A. Facial Challenges

Premier contends Dent's motion should be rejected categorically, without separate consideration of its component elements. First and foremost, Premier contends any application of collateral estoppel would be fundamentally unfair because Premier did not reasonably expect the "bellwether" trial to preclude issues in any future litigation. Neither the rules governing bellwether trials nor Premier's own expectations are determinative on this motion. Indeed, as Dent observes, the trials here are not "bellwethers" in the conventional sense. In contrast to a mass tort action, Plaintiff's counsel here brings a set of cases largely with the same facts under different states' laws.

In any event, Premier's contentions about bellwethers are not supported by the caselaw. Premier does not cite any Ninth Circuit precedent holding bellwethers cannot decide issues in future litigation. In fact, the Ninth Circuit has not squarely addressed whether bellwether trials can have later preclusive effect. However, Dent has the better read of the tea leaves, as it seems likely the Circuit would permit bellwethers to decide identical issues in subsequent cases. *See Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) (commenting in dicta that "ordinary principles of collateral estoppel may apply in subsequent cases" after a bellwether). Scholarship on multidistrict litigation confirms as much. *See, e.g.*, Alexandra D. Lahav, *Bellwether Trials*, 76

Geo. Wash. L. Rev. 576, 624 (2008) ("In the bellwether trial context, a court can preclude the defendant from relitigating in extrapolation cases those issues that have been fully litigated in the sample trials."). Premier cites to non-binding cases where courts have declined to apply issue preclusion after a bellwether, but Dent counters with other instances where courts have done so. Therefore, the "bellwether-like" nature of *Montera* does not foreclose any preclusive effect.

Regardless, as noted above and as Premier acknowledges, *Montera* was not a true bellwether trial given the nature of the claims. Considering the limited guidance offered by bellwether case law, the record is particularly important. While Premier may not have expected the *Montera* trial to have roll-on effects, it does not follow that any effects would be fundamentally unfair. Premier does not point to any agreement between the parties or orders explicitly cabining *Montera*'s preclusive effect. Without analogous caselaw or any record of a waiver of the right to argue for preclusion, Premier's expectations cannot, standing alone, blunt the effect of the final judgment in *Montera*.

Premier next argues California law bars issue preclusion in this posture. First, Premier avers *Montera* decided no issue "identical" to Dent's claims because Montera and Dent sue under different state laws. California's "identical issue" requirement addresses whether "identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 94 Cal.Rptr.3d 1, 207 P.3d 506 (2009) (citation omitted); *Hardwick v. Cty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (same). Montera and Dent both aver Premier's advertisement and marketing of Joint Juice was misleading, harming entire classes of consumers in each state. The advertisement and labeling of Joint Juice was identical in New York and Illinois. Additionally, Dent's suit is based on the same time period as Montera's. Finally, Dent and Montera both aver the marketing of Joint Juice deceived them into purchasing the product. Therefore, at least at first blush, *Montera* and this suit raise identical factual allegations.

Premier then argues California precedent requires rejection of Dent's motion. Defendant contends no California court has allowed collateral estoppel to decide elements of a class claim.

ORDER ON ISSUE PRECLUSION
CASE No. 16-cv-06721-RS

United States District Court
Northern District of California

1    However, the precedents cited by Premier do not go so far as to bar this motion entirely. *See*

2    *Sandoval v. Super. Ct.*, 140 Cal. App. 3d 932 (1983), *Ass'n of Irritated Residents v. Dep't of*

3    *Conservation*, 11 Cal. App. 5th 1202 (2017) and *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.

4    App. 4th 846 (2001). While these cases do hold preclusion cannot apply across "different

5    transactions," the transactions at issue here are not fundamentally different from those litigated in

6    *Montera*. The Joint Juice advertising is the same as in *Montera*, and whether the advertising is

7    deceptive is evaluated using the same reasonable consumer standard, not individual consumer

8    understandings.

9        Premier relies on cases which do not use "different transactions" to refer to separate

10    purchases of the same product by different consumers. In *Ass'n of Irritated Residents*, issue

11    preclusion was inapplicable because the second set of plaintiffs challenged specific agency actions

12    not contested in the first case. 11 Cal. App. 5th at 1129 ("[I]t is clear that the two cases are

13    factually distinct in several respects, including differences in oil drilling projects, locations, oil

14    companies that owned and operated the wells at issue, and different factual and legal challenges

15    under CEQA." *Id*. at 1231.).

16        *Sandoval* determined the preclusive effect of inconsistent prior verdicts. 140 Cal. App. 3d

17    at 943 (one prior jury found a defect while the other found none). Here, the only verdict in

18    question is *Montera*, and therefore *Sandoval* is inapposite. Indeed, *Sandoval* recognized that if the

19    verdict in favor of the defendant was vacated, the remaining verdict would have issue preclusive

20    effect. *Id.* at 944.

21        Finally, *Flores* declined to apply issue preclusion when the loan agreement at issue was

22    signed "by different parties under different circumstances." 93 Cal. App. 4th at 852. Premier does

23    not dispute consumers in Illinois and New York were exposed to identical advertising and

24    marketing of Joint Juice. An additional challenge for the plaintiffs in *Flores* was that the prior case

25    they sought to use was unpublished, and California rules prevented the court there from relying on

26    unpublished opinions. Given these distinctions, *Flores* is not applicable to issue preclusion here.

27    Moreover, *Flores* did not even mention the application of non-mutual issue preclusion in class

28    cases.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Although Dent cannot point to a California state case applying issue preclusion in a class claim, neither can Premier find caselaw prohibiting the application of issue preclusion in class actions. Federal precedent offers guidance, and the foundational case for nonmutual collateral estoppel applied offensive issue preclusion in a class action. *See Parklane*, 439 U.S. at 330–31. Given California courts' regular citation to *Parklane*, it is safe to infer that California law does not prohibit classwide estoppel. Accordingly, Premier fails to rebut the relevance of *Montera* to Dent's case.

Finally, Premier argues applying issue preclusion would "freeze a single decision in time and perpetuate it." Premier contends issue preclusion "was never intended to operate" even "between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants." *Hurd v. Albert*, 3 P.2d 545, 549 (Cal. 1931). As Premier tells it, new scientific advances in the study of glucosamine's potential benefits necessitate a full trial on whether Joint Juice's label was in fact deceptive.

Premier's argument fails because new witnesses or cumulative evidence do not negate issue preclusion. The existence of alternate experts who were previously available but not designated does not provide an exception to issue preclusion. *Roos v. Red*, 130 Cal. App. 4th 870, 887 (2005) ("important new witness" did not prevent issue preclusion); *Lucas v. Cnty. of L.A.*, 47 Cal. App. 4th 277, 286 (1996) ("collateral estoppel applies on issues litigated even though some factual matters or legal arguments which could have been raised were not"). Premier seeks to introduce, via these experts, new studies that are merely cumulative of the evidence it presented in *Montera*. Defendant cannot undermine the final judgment of *Montera* with an "expanded record." *Evans v. Celotex Corp.*, 194 Cal. App. 3d 741, 748 (1987) ("An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation."). Dent persuasively cites to multiple cases applying California law on issue preclusion over parties' attempted presentation of cumulative evidence. *See, e.g., Freeman v. Ethicon, Inc.*, 619 F. Supp. 3d 998, 1007 (C.D. Cal. 2022*)* ("Under California law, 'even if ... new evidence was not previously available, ... collateral estoppel will still apply if the new evidence

ORDER ON ISSUE PRECLUSION
CASE No. 16-cv-06721-RS

goes only to the weight of the evidence in support of the party who opposes preclusion.'"); *Orange Cnty. Water Dist. v. Alcoa Global Fasteners, Inc.*, 12 Cal. App. 5th 252, 361–62 (2017) (new tests only went to weight of evidence presented in previous litigation); *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 650 (N.D. Cal. 2007) (under California law "new evidence [] not previously available" that goes to weight does not provide an exception to issue preclusion).

  *Freeman* particularly highlights the weakness of Premier's argument. The defendant in that case argued "permitting issue preclusion would unfairly deprive them of the ability to offer evidence at trial that has developed since the state court trial [and] cite[d] two scientific studies which generally found that Defendants' mesh products do not cause the injuries[.]" *Id*. at 1006. Rejecting this argument, the *Freeman* court found that the additional science was cumulative of evidence previously considered in the state court action and thus, only went "to the weight of the evidence." *Id*. at 1007. The same is true here. Premier's additional science is more of the same that the *Montera* jury rejected.

  Although Premier insists its presentation of new scientific evidence and experts is necessary to determine potential punitive damages, Dent is not seeking preclusion on this issue. Premier can certainly argue at a later stage for the relevancy of the evidence it raises in briefing. However, Premier offers no reason at this point to prevent issue preclusion wholesale.

## B. Particular Issues

  In order for *Montera* to have preclusive effect, Dent must demonstrate that a decision in that case meets four requirements under California law. Premier concedes the verdict and final judgment in *Montera* was a final adjudication against the same defendant as here. Therefore, Dent still needs to identify issues in her case identical to *Montera*'s, and that those issues were actually litigated. *See DKN Holdings*, 61 Cal. 4th at 825.

  Examination of each issue requires comparison between Dent's claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA" or "Consumer Fraud Act") and Montera's claims brought under New York's consumer protection statutes, codified in New York's General Business Law Sections 349 and 350.

  To recover under the ICFA, a plaintiff must demonstrate: "(1) a deceptive or unfair act or

United States District Court
Northern District of California

practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson*, 775 N.E.2d at 960). In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Siegel*, 612 F.3d at 935.

Montera proved liability under New York's analogous consumer protection statutes. GBL § 349 generally prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce" and § 350 specifically deems unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." GBL §§ 349(a), 350. To recover for deceptive advertising under either § 349 or 350, Montera had to demonstrate that Premier "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. App. Div. 2012).

### i.     *Deceptive Act or Practice*

Dent argues *Montera* decided the advertising of Joint Juice was materially deceptive, as defined by Illinois law. Whether the business practice is deceptive in violation of the ICFA is determined using an objective, reasonable person standard. *Ambrosius v. Chi. Athletic Clubs, LLC*, 203 N.E.3d 239, 249 (Ill. App. 2021) (whether an act is deceptive is determined by how it was "reasonably understood"); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014); *Tylka v. Gerber Prods., Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998). Whether an act or practice is deceptive under § 349 or 350 is determined by whether it is "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Montera*, 111 F.4th at 1028 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. App. Div. 1995)).

The *Montera* jury was instructed that the only "act or practice" at issue was the advertising on the Joint Juice label: "The acts, practices, and advertisements at issue for your analysis are the labels and packaging for the Joint Juice product. You are not to assess whether any other acts,

1    practices, or advertisements by Premier Nutrition are misleading or deceptive." Dkt. No. 114-4.

2    The jury was then informed that to prove a violation of GBL §§ 349 or 350, "Montera must prove

3    that the advertisement was likely to mislead a reasonable consumer acting reasonably under the

4    circumstances." *Montera*, 111 F.4th at 1029; *id.* at 1034.

5         Premier essentially concedes the *Montera* jury decided Joint Juice's label was misleading.

6    Premier only contests the "materiality" finding, arguing New York and Illinois use different

7    standards. Premier argues Illinois exclusively defines materiality as either whether "a reasonable

8    person could be expected to rely" on this information, *Cirone-Shadow v. Union Nissan of*

9    *Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) or whether a person "would have acted

10   differently" knowing this information, *Roberts v. Robert V. Rohrman, Inc.*, 909 F. Supp. 545, 550

11   (N.D. Ill. 1995). The materiality instruction in *Montera* read: "[Other instructions] all use the term

12   'material.' A representation is material if a reasonable consumer would consider it important in

13   determining whether to purchase the product." Dkt. No. 114-4. Therefore, Premier concludes

14   *Montera* decided a different issue than materiality under the ICFA.

15        Premier misconstrues the applicable law. Dent points out Illinois courts also use the same

16   formulation offered to the jury in *Montera*. In *Ash v. PSP Distrib., LLC*, 226 N.E.3d 748 (Ill. App.

17   2023) the court discussed "materiality" under the ICFA. In one passage, materiality is described as

18   the "'trier of fact could have concluded that plaintiff would have acted differently had it known'"

19   the true facts. *Id.* at 755. In the next passage, materiality is described as "what a reasonable

20   consumer would regard as important in making a decision." *Id.* (citing *Connick v. Suzuki Motor*

21   *Co.*, 675 N.E.2d 584 (Ill. 1996)). Because the *Montera* jury determined Premier's advertising of

22   Joint Juice was a deceptive act or practice using the same standards imposed by Illinois law,

23   *Montera* is issue preclusive on the first element of the ICFA.

24        *ii.    Intent*

25        The *Montera* jury did not need to reach any conclusion as to Premier's intent. ICFA intent

26   means the defendant intended for plaintiff to rely on the alleged deceptive act or practice, as

27   opposed to an intent to deceive. *Wigod*, 673 F.3d at 575; *Carl Sandburg Vill. Condo. Ass'n No. 1*

United States District Court
Northern District of California

*v. First Condo. Dev. Co*., 557 N.E.2d 246, 250 (Ill. App. 1990). Although the ICFA is not limited to acts of intentional deception, New York law does not require any finding of intent to impose liability. Dent argues Premier's intent obviously flows from the factual questions decided by *Montera*, but this does not meet the high bar of "identical" set by California law. Therefore, this element was not decided in *Montera* and cannot be precluded in Dent's case.

      *iii.*      *Course of Conduct Involving Trade or Commerce*

      Dent avers *Montera* has already determined Premier's conduct at issue here involved trade or commerce. Premier does not dispute this claim. The ICFA prohibits deceptive practices "occur[ing] during a course of conduct involving trade or commerce." *Siegel*, 612 F.3d at 934. In *Montera*, Premier stipulated at trial that "Defendant's advertising and sale of Joint Juice in the state of New York is an act or practice 'in the conduct of any business, trade or commerce' within the meaning of New York General Business Law, GBL, §§ 349(a) and 350. In addition, the jury was instructed that "New York General Business Law ('GBL') § 349 declares as unlawful deceptive acts and practices in the conduct of any business, trade, or in the furnishing of any service in the State of New York." Ex. 4 (Instruction No. 18). By finding that Premier violated GBL § 349, the jury necessarily found that Premier's advertising and sale of Joint Juice "occurred during a course of conduct involving trade or commerce" in terms of the ICFA. *Curiel*, 15 Cal. 5th at 452 (when judgment is dependent on resolution of several issues, the rendered judgment is conclusive as to all issues). *Montera* is issue preclusive on the fact Premier's advertising and sale of Joint Juice was in the course of business, trade, or commerce.

      *iv.*      *Causation*

      Dent concedes she must prove individual causation, as she was not a part of the *Montera* class and her purchase therefore was not decided in that case. However, Dent argues the *Montera* verdict is determinative on the issue of classwide causation. The ICFA requires that the defendant's deceptive practice proximately caused the damages suffered by plaintiff. *Rikos v. P&G*, 799 F.3d 497, 514 (6th Cir. 2015) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009)). When a misrepresentation is at issue, causation requires that plaintiff "receive, directly or

United States District Court
Northern District of California

1    indirectly, communication or advertising from the defendant." *Rikos*, 799 F.3d at 514 (citing *De*

2    *Bouse*, 922 N.E.2d at 316); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996)

3    (proximate cause element met by allegation that plaintiffs' purchases occurred after defendant

4    published the deceptive statements). "The Consumer Fraud Act does not require actual reliance."

5    *Ash v. PSP Distrib., LLC*, 226 N.E.3d 748, 754 (Ill. App. 2023) (citing *Siegel v. Levy Org. Dev.*

6    *Co.*, 607 N.E.2d 194, 180 (Ill. 1992)).

7         Dent argues because materiality cannot be relitigiated, neither can classwide causation.

8    Causation can be established classwide "if plaintiffs are able to adduce sufficient evidence that the

9    representation was material." *Rikos*, 799 F.3d at 514; *see also Mullen v. GLV, Inc.*, 330 F.R.D.

10   155, 156 (N.D. Ill. 2019) (court may infer proximate causation on a classwide basis when all class

11   members are subject to a material, standardized misrepresentation); *Peterson v. H&R Block Tax*

12   *Servs., 174 F.R.D. 78, 84 (N.D. Ill. 1997)* (inferring classwide causation under ICFA). Premier

13   responds that materiality is one way to infer causation classwide, but that *Montera* did not decide

14   an issue "identical" to ICFA causation.

15        As discussed above, Dent is entitled to preclusion on the materiality of Premier's

16   deception. Dent additionally has a strong argument the jury verdict in *Montera* has relevance to

17   the question of classwide causation here. The jury in *Montera* concluded Premier's material

18   misrepresentations caused the purchaser class injury. The *Montera* verdict form required a finding

19   that "Ms. Montera and the class suffered injury as a result" of Premier's deceptive advertising. Ex.

20   5. The Ninth Circuit summarized as follows: "The jury found that Premier's claims about the

21   benefits of Joint Juice were materially misleading to a reasonable consumer and that all class

22   members were injured as a result of purchasing a product valueless for its advertised purpose."

23   *Montera*, 111 F.4th at 1034.

24        Despite *Montera*'s favorable findings, Dent is unable to meet the required showing for an

25   "identical issue." While Dent *could* certainly demonstrate causation by proving the class was

26   exposed to uniform, materially misleading misrepresentations, Montera did not actually do so in

27   her case. Moreover, based on the caselaw presented, such a showing is necessary, but not

28

sufficient for a finding of ICFA causation. *See, e.g.*, *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2018 WL 6617106, at *11 (S.D. Ill. July 3, 2018) ("Plaintiffs can use class-wide evidence to establish proximate causation under the ICFA if they establish Defendants made a uniform misrepresentation or omission to the class, *and* the only logical reason for Plaintiffs' behavior is that they purchased GSC as a result of the deception."); *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 166 (N.D. Ill. 2019) (requiring proof that "no rational class member would have acted as they did absent the misrepresentation"). Given the daylight between the causation found in *Montera* and the causation required by the ICFA, Dent is not entitled to preclusion on classwide causation.

    *v.*    *Measure of Harm*

       Dent argues that although a factfinder would need to determine the total amount of damages owed to the Illinois class, the measure of harm was already decided in *Montera*. The ICFA defines damage as "the value of what [plaintiff] received less than the value of what was promised." *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. 2008). This measure of damages, sometimes called "benefit-of-the-bargain," means the "defrauded party is entitled to the benefit of his bargain in a transaction and should be placed in the same position that he would have occupied had the false representations on which he acted been true." *Id*. at 1196–97. When the deceptively advertised product provides no value to the consumer, the "benefit-of-the-bargain" measure is full refund of the purchase price. *See Suchanek, 2018 U.S. Dist. LEXIS 213658, at *41* (full refund of purchase price proper measure of ICFA damages if product "had no value to consumers"); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) (purchase price appropriate measure of ICFA damages when plaintiff alleged he would not have purchased except for deceptive packaging); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 709 (N.D. Ill. 2020) (benefit of the bargain damages under ICFA may be the purchase price).

       The jury in *Montera*, in finding liability and awarding the entire purchase price to consumers, necessarily concluded Joint Juice was valueless for its advertised purpose. In front of that jury, Premier presented extensive evidence arguing purchasers received benefits apart from

the potentially deceptive joint health ones advertised on Joint Juice's label. However, the jury awarded full refunds for every unit of Joint Juice sold in New York, declining to reduce that award based on Premier's suggested alternative benefits, such as Vitamin C, Vitamin D, antioxidants, and hydration. *See also Montera*, 111 F.4th at 1032 ("[T]he jury concluded that the class members purchased Joint Juice and did not receive the full value of their purchase – in fact, did not receive any value – because Joint Juice did not provide its advertised benefits.").

Premier tries and fails to introduce ambiguity into this finding. Premier also circles back to the necessity of causation to find liability under the ICFA. Neither argument negates the preclusive effect of *Montera*. With the measure of damages determined by *Montera*, the damages issues in *Dent* are narrowed to the calculation of damages due to the Illinois class based on the number of units sold and the purchase price, and punitive damages.

### vi.    Premier's First Amendment Defense

Premier claims it is entitled to raise a First Amendment defense to liability, in spite of any potential issue preclusion. Premier failed to raise this defense in *Montera* until its renewed judgment as a matter of law after trial. Therefore, the arguments were not addressed on their merits. Premier argues *Montera* does not estop this defense because "a former judgment is not collateral estoppel on issues which might have been raised but were not." *Mobilepark W. Homeowners Ass'n v. Escondido Mobilepark W.*, 35 Cal. App. 4th 32, 48 (1995). As Dent points out, however, "issue preclusion requires only the opportunity to litigate … not whether the litigant availed himself or herself of the opportunity." *People v. Curiel*, 15 Cal. 5th 433, 452 (2023).

Premier's position is ultimately unpersuasive because "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (citing *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)); *see also* Restatement (Second) of Judgments § 27 ("[I]f the party against whom preclusion is sought did in fact litigate an issue [of law] ... and suffered an adverse determination, ... new arguments may not be presented to obtain a different determination of that issue."); *accord Smith v. Harrington*, 2015

1    WL 1407292, at \*16 (N.D. Cal. Mar. 27, 2015) ("Clearly a former judgment is not a collateral

2    estoppel on issues which might have been raised but were not; just as clearly it is a collateral

3    estoppel on issues which were raised, even though some factual matters or legal arguments which

4    could have been presented were not.").

5         The core issue in *Montera* is whether Premier's marketing was false or misleading.

6    Premier's attempt to recast the issue narrowly as one of free speech falls short. Indeed, to hold

7    otherwise—and confine the issue to the specific arguments and legal theories that Plaintiffs

8    strategically decided to advance—runs the risk of incentivizing litigant gamesmanship and runs

9    contrary to the spirit of the doctrine. Moreover, misleading commercial speech is not protected.

10   *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 565 (1980). Based on the

11   findings of the jury in *Montera*, affirmed by the Ninth Circuit, Premier cannot raise a First

12   Amendment defense to its conduct.

13   **C. Fairness Concerns**

14        Although the *Parklane* factors are not exhaustive, it is notable that none of the potential

15   concerns highlighted by the Supreme Court are present here. *See* 439 U.S. at 330–31. Dent had no

16   incentive to adopt a "wait and see" attitude in the hopes that the first action by another plaintiff

17   would result in a favorable judgment. In fact, Dent and Class Counsel here attempted to certify a

18   nationwide class and proceed with the Illinois claims years earlier. Next, Premier had the incentive

19   to defend against the first suit. Premier vaguely suggests it would have disputed the ordering of

20   trials more forcefully if it had expected *Montera* could have later preclusive effect. However, there

21   is no evidence Premier did not vigorously litigate *Montera*, as evidenced by the nine-day trial,

22   comprehensive appeal to the Ninth Circuit, and Premier's pending petition for certiorari to the

23   Supreme Court. Third, the only previous judgment entered in this broader dispute is *Montera*'s.

24   Therefore, there is no indication the single adverse judgment is somehow unfair. Finally, this court

25   offers the same procedural opportunities here as it did in *Montera*, so precluding the relitigation of

26   issues does not procedurally disadvantage Premier.

27        Premier argues applying issue preclusion would not fulfill the doctrine's policy goals,

ORDER ON ISSUE PRECLUSION
CASE NO. 16-cv-06721-RS

United States District Court
Northern District of California

United States District Court
Northern District of California

including avoiding harassment of parties and promoting judicial economy. Neither point supports rejecting Dent's motion in its entirety. Collateral estoppel can protect parties from harassment by vexatious litigation in some situations, but this is not the only purpose of its application. Additionally, judicial economy is served by narrowing the issues for trial. Premier argues preclusion is only efficient in an "all or nothing" scenario. Premier contends piecemeal preclusion risks prejudice and confusion, negating any efficiency gains. However, many courts have precluded the litigation of some, but not all issues. Targeted preclusion is manageable and will streamline proceedings in front of a factfinder here. Premier's citations to non-binding and out-of-circuit cases are not persuasive to the contrary.

Finally, Premier argues that if collateral estoppel applies to any issue in this matter, then a stay is appropriate while the Supreme Court evaluates Premier's petition for certiorari. However, the pendency of an appeal does not bar the application of issue preclusion. *See Collins v. Horton*, 505 F.3d 874, 882–83 (9th Cir. 2007) ("[W]e have held that the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment." (citations omitted)). Moreover, Premier's appeal takes issue with the Ninth Circuit's approach to certification of questions of state law. While this potentially could have downstream effects on the final judgment in *Montera*, those effects are too speculative and too remote to justify a stay.

## II. CONCLUSION

For the foregoing reasons, Dent's motion for issue preclusion is granted in part. *Montera* decided the materiality of Premier's misrepresentations, Premier's actions in trade or commerce, and the measure of harm. Therefore, Premier is estopped from relitigating those issues here. However, to succeed on her claims, Dent must still prove causation and intent to deceive under the IFCA.

Finally, a word on the tortured path of this now antique litigation is proper. It is perfectly understandable that litigants may require discovery, active motion practice, and even trial proceedings and appeals before they can bring a complex action to a final resolution. In this set of related cases, that point has long since come and gone. The parties do their clients and the judicial

system a disservice by prolonging these cases endlessly. They now have amassed more than

sufficient points of information with which to negotiate an end to these actions. They should do so

forthwith.

**IT IS SO ORDERED**.

Dated: May 2, 2025

RICHARD SEEBORG
Chief United States District Judge